1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**KALIELGOLD PLLC**
Jeffrey D. Kaliel (SBN 238293)
jkaliel@kalielpllc.com
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Telephone: (202) 350-4783

**KALIELGOLD PLLC**
Sophia G. Gold (SBN 307971)
sgold@kalielgold.com
950 Gilman Street, Suite 200
Berkeley, CA 94710
Telephone: (202) 350-4783

*Attorneys for Plaintiff and the Putative Class*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

BRIAN LANOUETTE, on behalf of himself and all others similarly situated,

              Plaintiff,

  v.

AMERICAN HONDA FINANCE CORPORATION dba HONDA FINANCIAL SERVICES,

              Defendant.

CASE NO.:

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Brian Lanouette files this action on behalf of himself and on behalf of all others similarly situated and alleges as follows upon personal knowledge with respect to Plaintiff's own acts and based upon information and belief as to all other matters.

## NATURE OF THE CASE

1.     Plaintiff brings this action on behalf of himself and all others similarly situated arising from Defendant American Honda Finance Corporation dba Honda Financial Services' ("Defendant" or "Honda Financial") practice of collecting and failing to refund unearned fees from Guaranteed Asset Protection Waivers ("GAP Waiver") in breach of its contracts with consumers.

2.     Under the terms of its contracts with consumers, Honda Financial is required to refund to consumers all unearned fees for GAP Waivers when consumers pay off their automobile finance agreements early.

3.     In breach of that promise, and in contravention of state statute, Honda Financial, as a matter of policy, fails to refund consumers of unearned fees when finance agreements terminate early.

4.     As a result of this practice, Honda Financial knowingly collects and retains millions of dollars per year in unearned fees from automobile purchasers.

5.     Honda Financial's policy and practice of retaining these unearned fees related to GAP Waivers when the underlying automobile loan is paid off early constitutes a breach of contract and an unfair business practice in violation of state consumer protection law.

6.     Plaintiff, on behalf of himself and the Class, seeks to end Honda Financial's practices and force it to refund unearned GAP fees. Plaintiff seeks damages, restitution, and injunctive relief on behalf of the general public.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one Class member is of

diverse citizenship from one of the defendants, there are 100 or more Class members nationwide, and the aggregate amount in controversy exceeds $5,000,000.

8.      Venue is proper in this district under 28 U.S.C. § 1391. Honda Financial maintains its headquarters and/or principal place of business in this district, regularly conducts business in this district, and a substantial part of the events giving rise to plaintiff's claims occurred in this district.

## PARTIES

9.      Plaintiff, Brian Lanouette, resides in Merrimack, New Hampshire, and did at all relevant times during the conduct alleged in this Complaint. Plaintiff purchased his vehicle and Gap Waiver from Boch Honda West, a Honda dealership located in Westford, Massachusetts.

10.      Defendant Honda Financial Services, dba as American Honda Finance Corporation, is headquartered at 1919 Torrance Blvd., Torrance California 90501. Honda Financial markets itself as helping "to satisfy the financing needs of consumers of Honda products including automobiles, sport utility vehicles, minivans, motorcycles, powersport products, marine engines and power equipment" by offering "financing in the form of both retail installment contracts and leases[.]"[1]

## FACTUAL ALLEGATIONS

### A.    GAP Waivers

11.      If a consumer gets into accident and their car is deemed a "total loss," or if a consumer's car is stolen, the amount the consumer owes on their car loan may end up being more than the amount the insurance company is willing to pay for the consumer's loss. This difference between what an insurer is willing to pay and what the consumer still owes is known as the "gap."

12.      For both consumers and creditors, the risk that a consumer will not be able to cover the "gap" often makes financing untenable. Enter GAP products. GAP products allow consumers to cover the "gap" between the amount owed to the

---

[1] https://www.hondafinancialservices.com/help/about-us (last visited August 19, 2021).

creditor and the proceeds from the insurance policy.

13.    GAP products were first introduced in the 1980s and have become increasingly popular over time. There are generally two types of GAP products. The first is GAP insurance. GAP insurance is a contract between an insurance company and a consumer, in which the insurer agrees to cover the consumer's GAP in the event of a total loss of the vehicle. With GAP insurance, if a total loss occurs and the current value of the vehicle is worth less than the amount owed to the creditor, then the insurance company will pay the creditor the difference. In other words, the insurance company is paying off the loan balance on the consumer's behalf. The consumer pays insurance premiums directly to the insurance company for this coverage. This case does not concern GAP insurance.

14.    Instead, this case concerns GAP Waivers. GAP Waivers were developed as an alternative to GAP Insurance. Unlike GAP Insurance, GAP Waivers are a "debt cancellation agreement" rather than insurance, because with a GAP Waiver, the creditor agrees to write off the "gap" in the event of a "total loss" or if the vehicle is stolen and the insurance proceeds are insufficient to pay off the loan. The development of GAP Waivers have generally allowed the automobile industry to circumvent insurance regulations and licensing requirements while offering what is only a slightly modified version of GAP insurance.

15.    To obtain a GAP Waiver, the consumer and the vehicle seller, or dealer, execute a GAP Waiver form. The GAP Waiver forms are form contracts that are offered to consumers on a take-it-or-leave-it basis. The Gap Waiver form provides that if a consumer suffers a total loss, and the insurance payout for the vehicle is insufficient to pay off the remaining loan balance, then the creditor on the car financing agreement will agree to waive the difference, provided the consumer pays a fee.

16.    These GAP fees are included as a separate line item in the vehicle purchase finance agreement and are incrementally paid in monthly installments by

the consumer over the life of the loan, with interest, along with the rest of the purchase price of the vehicle.

17.    Importantly, Honda Financial's GAP Waiver provides that if the car finance agreement is paid off prior to the end of the full loan term, then the consumer is entitled to a refund of the unused portion of the GAP Waiver fees. Such a provision makes sense: consumers should not have to pay for a service they no longer need and derive no benefit from.

**B.    Honda Financial's Role as the Creditor on Finance Agreements with GAP Waivers**

18.    In this case, Plaintiff purchased his vehicle from Boch Honda West, a Honda dealership located in Westford, Massachusetts. Honda Financial offers Honda Care GAP coverage to consumers who purchase new and pre-owned Honda vehicles, Honda Certified Pre-Owned Vehicles, and pre-owned non-Honda vehicles.[2]

19.    It is apparent from the vehicle financing agreement whether the consumer purchased a GAP Waiver. The front page of the financing agreement generally indicates if it includes a GAP Waiver, and the agreement will also separately list the total amount of the GAP fees in a breakdown of the amount being financed by the consumer. Honda Financial also receives a copy of the consumer's finance agreement and GAP Waiver agreement from the dealer. As a result, Honda Financial knows which financing agreements have GAP Waivers.

20.    Throughout the term of the loan, the payoff amount includes the remaining cost of the GAP Waiver, which is included in the aggregate amount financed by the consumer when they purchase the vehicle. Thus, when a consumer prepays their vehicle loans in full, the total payoff amount to Honda Financial includes the full remaining cost of the GAP Waiver, even though the consumer derives no benefit from paying that cost. Honda Financial then fails to provide any credit or refund for the unearned GAP Waiver fees, despite knowing that those fees

---

[2] https://www.hondafinancialservices.com/finance/gap-coverage (last visited August 20, 2021).

are unearned because the consumer prepaid their loan and terminated the financing agreement.

21.    Honda Financial knows consumers are entitled to a refund of unearned GAP fees when they pay off their finance agreement early, but it collects the unearned GAP fees anyway. This has enabled Honda Financial to collect and keep millions of dollars in unearned GAP fees that rightfully belong to their consumers.

**C.    Plaintiff's GAP Waiver Contract with Honda Financial**

22.    On October 31, 2017, Plaintiff purchased a new 2017 Honda CR-V, VIN 5J6RW2H55HL078621, (the "Vehicle") from a dealer, Boch Honda West, located in Westford, Massachusetts. Mr. Lanouette is listed as the Vehicle's purchaser on the Purchase Contract.

23.    Mr. Lanouette purchased the Vehicle for a total sale price of $31,693.80, paying $1,200.00 down. The total amount financed was $45,140.00[3] with an interest rate of 8.26% APR, paid over 72 months at $798.58 per month beginning on October 31, 2017. Thus, the loan term was set to end on approximately October 31, 2023.

24.    As part of the Financing Contract, Mr. Lanouette purchased the optional GAP Waiver for a total of $750.00. That $750.00 was included in the total finance amount.

25.    The GAP Waiver stated that "This GAP Waiver amends the Financing Contract and is between the Customer/Borrower (you or your) and the Dealer (we, us, or our). Although not required to do so, you elect to purchase this GAP Waiver for an additional charge which is shown above." Mr. Lanouette signed this portion of the Financing Contract, agreeing to purchase the voluntary GAP Waiver.

26.    The GAP Waiver that Mr. Lanouette purchased was provided by Honda Financial, with Honda Financial listed as the creditor on that agreement at the time

---

[3] At the time of purchase, Plaintiff presented a 2016 Volkswagen Golf for trade-in, for which he owed a balance of $24,717.20, and was offered $10,500.00 trade-in allowance by the dealership. The total amount financed is the summation of the $24,717.20 owed on the trade-in and $21,622.80 total contract price (the total Vehicle price less the $10,500.00 trade-in allowance, plus the documentary preparation fee of $429.00) less the $1,200.00 deposit = $45,140.00.

- 6 -

Mr. Lanouette purchased it.

27.    The GAP Waiver provides that the contract may be cancelled or terminated at the will of the purchaser, including in instances where the "Financing Contract has been paid in full." The GAP Waiver unequivocally states:

> YOUR RIGHT TO CANCEL: You have the unconditional right to cancel and terminate this optional GAP Waiver for a refund/credit of the unearned portion of the charge at any time. If cancelled within 30 days of the GAP Waiver purchase, you will receive a full refund/credit of the GAP Waiver charge, provided no Constructive Total Loss has occurred. After 30 days, you will receive a refund/credit of the GAP Waiver charge calculated by the pro rata method or by the refund method as may be required by state or federal law, less a $50.00 cancellation fee. We will refund/credit all charges to the Financial Institution/Assigned Lender, unless your Financing Contract has been paid in full; in that case, the unearned GAP Waiver charge will be refunded directly to you.

28.    Thus, the GAP Waiver required Honda Financial to refund the unearned GAP fees to Mr. Lanouette.

29.    On approximately June 29, 2021, Mr. Lanouette paid off the remaining balance on his Vehicle loan, thereby satisfying the Financing Contract in full and cancelling the GAP Waiver contract before the full term of the loan had passed.

30.    But despite prepaying the Financing Contract in full approximately 28 months early, Mr. Lanouette did not receive a refund of a pro rata share of the $750 GAP fee.

31.    As a result, Honda Financial wrongfully retained unearned GAP fees from Mr. Lanouette.

## CLASS ACTION ALLEGATIONS

32.    Plaintiff brings this action on behalf of himself and as a class action under Rule 23(a) of the Federal Rules of Civil Procedure, on behalf of the following class of consumers (the "Nationwide Class"):

> All persons who, during the applicable statute of limitations, entered into finance agreements with GAP Waivers that were assigned to Honda Financial and who paid off their finance agreements before the end of the loan term but did not receive a refund of unearned GAP fees.

33.     Plaintiff also brings this action on behalf of himself and as a class action under Rule 23(a) of the Federal Rules of Civil Procedure, on behalf of the following class of consumers (the "Massachusetts Subclass"):

> All persons who, during the applicable statute of limitations, entered into finance agreements in the State of Massachusetts with GAP Waivers that were assigned to Honda Financial and who paid off their finance agreements before the end of the loan term but did not receive a refund of unearned GAP fees.

34.     The aforementioned Nationwide Class and Massachusetts Subclass are referred to herein as the "Class."

35.     Excluded from the proposed Class are: (a) Defendants and their agents, officers, directors, parent companies, subsidiaries, and affiliates; (b) counsel representing Plaintiff and any person employed by counsel; and (c) any judicial officers assigned to this case and their staff.

36.     Plaintiff reserves the right to revise the definition of the Class based upon subsequently discovered information.

37.     The members of the proposed Class are so numerous that joinder of all members would be impractical. The proposed Class likely contain thousands of members. The precise number of class members can be ascertained through discovery, which will include Honda Financial's records.

38.     Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and members of the Class have been injured by the same wrongful practices of Honda Financial. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the members of the Class and are based on the same legal theories.

39.     Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained class counsel who are experienced and qualified in prosecuting class actions. Neither Plaintiff nor his attorneys have any interest contrary to or in conflict with the Class.

40.     There are common questions of law and fact that predominate over any questions affecting only individual members of the Class, including:

      a.     Whether Honda Financial had a policy or practice of failing to refund unearned GAP Waiver fees on finance agreements assigned to Honda Financial;

      b.     Whether Honda Financial breached its contract with Plaintiff and the Class by failing to refund unearned GAP Waiver fees;

      c.     Whether Honda Financial was unjustly enriched;

      d.     Whether Honda Financial violated state consumer protection statutes;

      e.     The damages to which Plaintiff and the class are entitled.

41.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically infeasible and procedurally impracticable. While the aggregate damages sustained by the Class are likely in the millions of dollars, the individual damages incurred by each Class member are too small to warrant the expense of individual suits. The likelihood of individual Class members prosecuting their own separate claims is remote, and even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Further, individual members of the Class do not have a significant interest in individually controlling the prosecution of separate actions, and individualized actions would result in varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and the court system because that would result from multiple trials of the same factual

and legal issues. Plaintiff knows of no difficulty to be encountered in the management
of this action that would preclude its maintenance as a class action.

42. Honda Financial has, or has access to, contact information for members
of the Class which may be used for the purpose of providing notice of the pendency
of this action.

## CAUSES OF ACTION
## COUNT ONE

### BREACH OF CONTRACT INCLUDING BREACH OF THE COVENANT
### OF GOOD FAITH AND FAIR DEALING
### (On Behalf of Plaintiff and the Nationwide Class or,
### in the alternative, the Massachusetts Subclass)

43. Plaintiff hereby repeats, realleges, and incorporates by reference each
and every allegation contained above as though fully set forth herein.

44. Plaintiff and members of the Class entered into finance agreements with
GAP Waiver addendums that were assigned to Honda Financial.

45. Honda Financial breached the terms of the contract when it assessed and
failed to refund Plaintiff and the Class unearned GAP fees.

46. Further, under the law of each of the states where Honda Financial does
business, an implied covenant of good faith and fair dealing governs every contract
The covenant of good faith and fair dealing constrains Defendant's discretion to
abuse self-granted contractual powers.

47. This good faith requirement extends to the manner in which a party
employs discretion conferred by a contract.

48. Good faith and fair dealing, in connection with executing contracts and
discharging performance and other duties according to their terms, means preserving
the spirit—not merely the letter—of the bargain. Put differently, the parties to a
contract are mutually obligated to comply with the substance of their contract in
addition to its form. Evading the spirit of the bargain and abusing the power to specify
terms constitute examples of bad faith in the performance of contracts.

49.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified. A lack of good faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Other examples of violations of good faith and fair dealing are willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

50.     Defendant breached the covenant of good faith and fair dealing when it assessed and collected and failed to refund unearned GAP fees.

51.     Each of Defendant's actions was done in bad faith and was arbitrary and capricious.

52.     Plaintiff and members of the putative Class have performed all of the obligations on them pursuant to the contract.

53.     Lest there be any doubt, by way of this Complaint, Plaintiff hereby provides notice on behalf of himself and the putative class of his and class members' right to receive a refund under the contract.

54.     Honda Financial has therefore received written notice that Plaintiff and the members of the Class paid off their finance agreements early, thereby entitling them to a refund of any unearned GAP fees.

55.     Plaintiff and the members of the Class were harmed because Honda Financial failed to refund the unearned GAP fees after the early payoff of the finance agreements and failed to pay the interest that accrued on those unpaid amounts.

56.     Honda Financial is liable to Plaintiff and the members of the Class for the damages they suffered as a direct result of Honda Financial's collection and failure to promptly refund the unearned GAP fees, as well as the interest that accrued on those unpaid amounts.

## COUNT TWO
## VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW
### (On Behalf of Plaintiff and the Nationwide Class)

57.    Plaintiff hereby repeats, realleges, and incorporates by reference each and every allegation contained above as though fully set forth herein.

58.    Plaintiff brings this claim for violation of California Business and Professions Code 17200 *et seq.* (the "UCL") on behalf of himself and the members of the class.

59.    The UCL prohibits acts of "unfair competition," including any unfair, fraudulent or unlawful business practice.

60.    California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice." Honda Financial's conduct violates each of the statute's "unfair," "unlawful," and "fraudulent" prongs.

61.    The UCL imposes strict liability. Plaintiff need not prove that Honda Financial intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

62.    A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

63.    A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the public.

64.    A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

65.    Honda Financial committed unfair and fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.,* by affirmatively and knowingly misrepresenting the amount consumers owed Honda Financial with respect to unearned GAP fees. Plaintiff relied on these misrepresentations to his detriment.

- 12 -

66.     Defendant's acts and practices offend an established public policy of fee transparency in the marketplace, and constitute immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

67.     The harm to Plaintiff and the Class outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misleading and deceptive conduct described herein.

68.     Defendant's conduct also constitutes an "unlawful" act under the UCL because it also constitutes a violation of sections 1770(a)(5) and (a)(9) of the California Consumer Legal Remedies Act.

69.     Defendant's business practices have misled Plaintiff and the proposed Class and will continue to mislead them in the future.

70.     As a direct and proximate result of Defendant's unfair, fraudulent, and unlawful practices, Plaintiff and Class members suffered and will continue to suffer actual damages. Defendant's fraudulent conduct is ongoing and present a continuing threat to Class members that they continue overpaying Defendant.

71.     As a result of its unfair, fraudulent, and unlawful conduct, Defendant has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiff and Class members pursuant to Cal. Bus. & Prof. Code § 17203 and 17204.

72.     Pursuant to Business & Professions Code §§ 17203 and 17500, Plaintiff and the members of the Class, on behalf of the general public, seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their unfair, unlawful, and fraudulent practices.

## COUNT THREE
### VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT
### (On Behalf of Plaintiff and the Nationwide Class)

73.    Plaintiff hereby repeats, realleges, and incorporates by reference each and every allegation contained above as though fully set forth herein.

74.    This cause of action is brought pursuant to the Consumers Legal Remedies Act (CLRA), California Civil Code § 1750, *et seq*.  Plaintiff and each member of the proposed Class are "consumers" as defined by California Civil Code § 1761(d). Defendant's sale of GAP Waivers were "transactions" within the meaning of California Civil Code § 1761(e). GAP Waivers are a "service" within the meaning of California Civil Code § 1761(b).

75.    Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of GAP Waiver:

    a.    "Representing that goods or services have . . . characteristics . . . that they do not have" (a)(5); and

    b.    "Advertising goods or services with intent not to sell them as advertised" (a)(9).

76.    Specifically, Defendant failed to disclose to customers that it would not refund unearned GAP fees at the time the Finance Agreement was fully paid.

77.    Honda Financial continues to violate the CLRA and continues to injure the public by misleading consumers about its GAP fees and by failing to refund unearned GAP fees. Accordingly, Plaintiff seeks injunctive relief on behalf of the general public to prevent Honda Financial from continuing to engage in these deceptive and illegal practices. Otherwise, Plaintiff, the Class members, and members of the general public may be irreparably harmed and/or denied effective and complete remedy if such an order is not granted.

78.    In accordance with Cal. Civ. Code § 1780(a), Plaintiff and the Class members seek injunctive and equitable relief on behalf of the general public for violations of the CLRA, including restitution and disgorgement.

79.     Pursuant to § 1782(a) of the CLRA, concurrent with the filing of this Complaint, Plaintiff's counsel notified Defendant in writing by certified mail of the particular violations of §1770 of the CLRA and demanded that it rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to act. If Defendant fails to respond to Plaintiff's letter or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice, as proscribed by §1782, Plaintiff will move to amend his Complaint to pursue claims for actual, punitive and statutory damages, as appropriate against Defendant.  As to this cause of action, at this time, Plaintiff seeks only public injunctive relief. Specifically, Plaintiff seeks an order enjoining Defendant from continuing to collect and failing to promptly refund unearned GAP fees after the early payoff of the finance agreement.

## COUNT FOUR

### VIOLATION OF MASSACHUSETTS CONSUMER PROTECTION ACT
### (On Behalf of Plaintiff and the Massachusetts Subclass)

80.     Plaintiff hereby repeats, realleges, and incorporates by reference each and every allegation contained above as though fully set forth herein.

81.     This cause of action is brought in the alternative to the extent the Court declines to apply California law to the nationwide class.

82.     Plaintiff and each Class member is a person, as that term is used in Section 9(1) of Chapter 93A.

83.     Defendant is a person engaged in the conduct of trade or commerce, as those terms are used in Sections 2(a) and 9(1) of Chapter 93A.

84.     Defendant's improper retention of unearned GAP fees is an unfair or deceptive act or practice, pursuant to Section 2 of Chapter 93A and Section 10.00 *et seq.* of Code of Massachusetts Regulations Title 940, specifically Regulation 10.04(5)(f).

85.     Defendant knew or should have known that its policy and practice of

retaining unearned GAP fees violated its contract, as well as state statute, and constituted an unfair or deceptive business act or practice.

86.     Defendant's retention of unearned GAP fees has injured Plaintiff and each member of the Class.

87.     Defendant's ongoing policy and practice of failing to refund unearned GAP fees will continue to harm Plaintiff and each member of the Class.

88.     Equitable relief requiring Defendant to refund unearned GAP Fees will substantially benefit Plaintiff and each member of the Class.

89.     Concurrently with the filing of this complaint, written demand for relief was served upon Defendants pursuant to Chapter 93A. If the Defendant fails to respond within 30 days, Plaintiff reserves the right to request treble damages and attorneys' fees.

## COUNT FIVE
### UNJUST ENRICHMENT
**(On Behalf of Plaintiff and the Nationwide Class or, in the alternative, the Massachusetts Subclass)**

90.     Plaintiff hereby repeats, realleges, and incorporates by reference each and every allegation contained above as though fully set forth herein.

91.     To the detriment of Plaintiff and the Class, Defendant has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

92.     Plaintiff and the Class conferred a benefit on Defendant when they paid Defendant unearned GAP fees.

93.     Defendant unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits, which under the circumstances, would be unjust to allow Defendant to retain.

94.     Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

95.     Plaintiff and the Class, therefore, seek disgorgement of all wrongfully obtained fees received by Defendant as a result of its inequitable conduct as more

1  fully stated herein.

2  **PRAYER FOR RELIEF**

3      **WHEREFORE**, Plaintiff on behalf of himself and the Class seeks judgment

4  in an amount to be determined at trial, as follows:

5      (a)    For public injunctive relief, enjoining Defendant from continuing the

6            unlawful practices set forth above;

7      (b)    For declaratory and injunctive relief as set forth above;

8      (c)    For an order requiring Defendant to disgorge and make restitution of all

9            monies it acquired by means of the unlawful practices set forth above;

10     (d)    For compensatory damages according to proof;

11     (e)    For punitive damages according to proof;

12     (f)    For reasonable attorneys' fees and costs of suit;

13     (g)    For pre-judgment interest; and

14     (h)    Awarding such other and further relief as this Court deems just, proper

15            and equitable.

16  **JURY DEMAND**

17      Plaintiff hereby demands a jury trial on all claims so triable.

18  Dated:  September 1, 2021            Respectfully submitted,

19                                      **KALIELGOLD PLLC**

20                                      By:*/s/ Jeffrey D. Kaliel*

21                                      Jeffrey D. Kaliel

22                                      1100 15th Street NW, 4th Floor
                                        Washington, DC 20005

23                                      Tel: (202) 350-4783

24                                      jkaliel@kalielpllc.com

25                                      **KALIELGOLD PLLC**

26

27                                      By:*/s/ Sophia G. Gold*
                                        Sophia G. Gold

28                                      950 Gilman Street, Suite 200
                                        Berkeley, CA 94710
                                        Tel: (202) 350-4783

sgold@kalielgold.com

Scott Edelsberg, Esq. (CA 330090)
scott@edelsberglaw.com
**EDELSBERG LAW, P.A.**
20900 NE 30th Ave, Ste. 417
Aventura, FL 33180
Tel: 305-975-3320
Fax: 786-623-0915

*Attorneys for Plaintiff and the Putative Class*

- 18 -